ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| GAMALIEL RODRÍGUEZ LÓPEZ<br><br>Recurrente<br><br>v.<br><br>JUNTA DE DIRECTORES<br><br>Recurrido | **KLRA202300533** | *REVISIÓN ADMINISTRATIVA* procedente de DACO<br><br>Caso Núm.:<br>C-SAN-2021-0002802<br><br>Sobre:<br>Condominios |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 28 de noviembre de 2023.

Comparece ante este foro el Sr. Gamaliel Rodríguez López (señor Rodríguez o "el recurrente") y nos solicita que revisemos una *Resolución* emitida por el Departamento de Asuntos del Consumidor (DACo) el 27 de septiembre de 2023. Mediante el referido dictamen, el DACo desestimó la *Querella* contra del Sr. Alberto Rivera (señor Rivera o "parte recurrida"), como presidente de la Junta de Directores del Condominio Torruella.

Por los fundamentos que se exponen a continuación, **CONFIRMAMOS** la *Resolución* recurrida.

## I.

El 15 de septiembre de 2021, el señor Rodríguez presentó ante el DACo una *Querella* en contra de la parte recurrida.[1] Solicitó que el DACo emitiera una orden de cese y desista contra la Junta de Directores, por haber cortado el servicio de energía eléctrica en su apartamento. En esencia, planteó que el 15 de noviembre

---

[1] *Formulario Presentación Querella Propiedad Horizontal*, anejo I, págs. 1-41 del apéndice del recurso.

de 2019, adquirió su apartamento, y al comenzar a restaurarlo, encontró daños en las tuberías comunales, e inmediatamente lo notificó al señor Rivera. Sin embargo, alegó que hicieron caso omiso, por lo que, se vio en la obligación de reparar las tuberías comunales. Posteriormente, solicitó a la Junta de Directores que acreditaran los gastos a las cuotas, no obstante, sostuvo que la parte recurrida se negó.

Por su parte, el 6 de octubre de 2021, el señor Rivera, presentó *Solicitud de Resolución Sumaria y Contestación a la Querella*.[2] Arguyó que, procedía la resolución sumaria de la querella, puesto que, desde el 1 de septiembre de 2012, el recurrente tenía una deuda por concepto de cuotas de mantenimiento y seguros al 1 de octubre de 2021, ascendente a $101,446.02. Sin embargo, alegó que la cantidad original era de $25,141.07, pero aumentó por la penalidad del Artículo 59 de la Ley 120-2020, al habérsele desconectado el servicio de luz y el recurrente reconectarla sin autorización. A su vez, añadió que, al momento de asumir la presidencia en septiembre 2020, no había sido informado por el titular o la Junta anterior de la reclamación hecha por el señor Rodríguez. De igual forma, señaló que había ido con su personal a cotizar y evaluar los alegados problemas, sin embargo, la tubería había sido reparada sin la autorización e inspección de la Junta y/o Administración. Por consiguiente, sostiene le enviaron un comunicado al señor Rodríguez, mediante el cual le indicaron que no estaba autorizado a realizar dichas reparaciones en áreas comunes y que se haría

---

[2] *Solicitud de Resolución Sumaria y Contestación a la Querella*, anejo II, págs. 42-49 del apéndice del recurso.

responsable de los costos incurridos. Finalmente, expresó que luego de varios avisos por escrito al recurrente, concediéndole tiempo adicional para que realizara el pago, procedieron con el corte de servicio de electricidad.

Así las cosas, previo a resolver la solicitud de resolución sumaria, el 2 de mayo de 2022, el DACo llevó a cabo una vista administrativa mediante video conferencia, que solo contó con la comparecencia de la parte recurrida, y Urbana Property Management, Inc., parte co-querellada. Tras evaluar la prueba, el 1 de junio de 2022, el DACo notificó una *Resolución.*[3] En virtud de esta, ordenó el cierre y archivo de la *Querella*.

En desacuerdo, el 7 de septiembre de 2022, el señor Rodríguez solicitó la reconsideración de la *Resolución*.[4] El 22 de septiembre de 2022, el DACo acogió la moción de reconsideración, y dejó sin efecto la *Resolución* notificada el 2 de mayo de 2022.[5]

Luego de varias incidencias procesales, el 15 de noviembre de 2022, fue celebrada una vista administrativa, en la cual comparecieron todas las partes.[6] Conforme surge de la *Minuta*, el recurrente solicitó se le permitiera enmendar la querella para añadir unos alegados daños sufridos en su apartamento por el paso del Huracán Fiona, sin embargo, fue declarara *no ha lugar*. De igual forma, el DACo determinó que:

> Toda vez que [el recurrente] no incluyó como parte de las alegaciones de su querella impugnación alguna a la deuda que mantiene

---

[3] *Resolución*, anejo III, págs. 50-53 del apéndice del recurso.
[4] *Moción de Reconsideración*, anejo IV, págs. 54-57 del apéndice del recurso.
[5] *Resolución en Reconsideración*, anejo V, págs. 58-59 del apéndice del recurso.
[6] *Minuta y Orden*, anejo VII, págs. 74-75 del apéndice del recurso.

con el Consejo de Titulares del Condominio Torruella, ni enmendó su querella para impugnar la deuda previo a la celebración de la vista administrativa, se le concedió un término de veinticinco días para que salde la deuda por concepto de cuotas y/o derramas que [sic] mantiene con el condominio.

El 8 de diciembre de 2022, el señor Rodríguez presentó una *Moción de Reconsideración*.[7] Mediante esta, manifestó que la *Resolución* debía dejarse sin efecto, puesto que, contradice los principios de política pública que dispone la Ley Núm. 5 de 23 de abril de 1973, según enmendada, como también el Reglamento de Condominios Núm. 9386 de 6 de junio de 2022. A su vez, también alegó que dicha determinación violentó el debido proceso de ley al exigir el pago de unas cuotas sin que la parte recurrida haya aportado evidencia.

Posteriormente, el recurrente presentó *Moción Complementaria*, mediante la cual incluyó una declaración jurada negando la deuda, como a su vez, que haya realizado la reconexión en el apartamento de los servicios de agua o electricidad.[8]

Tras aquilatar la prueba presentada por las partes, el DACo emitió el 28 de septiembre de 2023 la *Resolución* recurrida.[9] Como parte de las determinaciones de hechos formuladas en el dictamen impugnado, el DACo manifestó, en lo pertinente, lo siguiente:

1. El querellante es titular del apartamento 101 del Condominio Torruella mediante Escritura de Compraventa otorgada el 15 de noviembre de 2019 ante el notario Milton Hernández Cott.

2. El Condominio Torruella se encuentra sometido al régimen de propiedad horizontal.

---

[7] *Moción de Reconsideración*, anejo VIII, págs. 76-142 del apéndice del recurso.
[8] *Moción Complementaria*, anejo IX, págs. 143-146 del apéndice del recurso.
[9] *Resolución*, anejo X, págs. 147-157 del apéndice del recurso.

3. El 15 de septiembre de 2021 el querellante presentó la querella de epígrafe, por derecho propio. Mediante la querella, el querellante solicita que se emita un cese y desista toda vez que la parte querellada había desconectado el servicio de energía eléctrica. No surge de la querella razón alguna que amerite la orden solicitada. Tampoco surge de la querella la razón por la que alegadamente se llevó a cabo el corte del servicio.

4. La querella contiene además una alegación referente a unos daños en unas tuberías comunales encontrados al comenzar a restaurar el apartamento luego de su compra. Alega el querellante que la Junta de Directores hizo caso omiso a sus requerimientos y que, ante la inacción de la Junta de Directores, se vio obligado a costear las reparaciones las cuales la parte querellada no quiere acreditar a su cuota de mantenimiento.

[…]

9. El 4 de mayo de 2021, la parte querellada envió una comunicación al querellante requiriéndole el pago por la cantidad $23,169.62 por concepto de cuotas, póliza de seguro, intereses, penalidades y/o derramas. Se apercibió al querellante que, de no recibirse el pago en su totalidad en o antes del 19 de mayo de 2021, procederían a realizar el corte de servicios.

[…]

15. El 13 de septiembre de 2021, el querellante envió comunicación a la parte querellada en respuesta a la comunicación de 18 de agosto de 2021. El querellante informa que ha solicitado el balance actualizado y no se le ha remitido. Además, informa que es su intención pagar el balance adeudado, condicionado a que se le acrediten las facturas de las labores realizadas para la corrección de tuberías comunales.

16. Ninguna de las comunicaciones enviadas por la parte querellada fueron impugnadas por el querellante ante este foro. La parte querellada procedió a cortar el servicio de energía eléctrica.

17. El estado de cuenta del apartamento propiedad del querellante, el 4 de octubre de 2021, refleja un balance de $101,446.02. La cantidad indicada en el estado de cuenta surge debido a que la parte querellada aplicó el equivalente a una triple

penalidad al haberse realizado una reconexión del servicio de forma ilegal.

18. El querellante no enmendó su querella en ningún momento para impugnar esa penalidad.

19. Toda vez que la querella ante nos no contiene impugnación de deuda alguna y, habiendo transcurrido más de treinta días desde la primera comunicación de 24 de marzo de 2021, sin que el querellante impugnase la acción de la Junta de Directores, este Departamento ordenó el pago de la totalidad de la deuda el 17 de noviembre de 2022, luego de haberse citado a las partes a una vista administrativa. A esta fecha no se había presentado enmienda alguna.

[…]

Así pues, el DACo desestimó la *Querella* incoada por el señor Rodríguez. Según concluyó, el recurrente en su *Querella* no impugnó la cantidad reclamada por el Consejo de Titulares, sino que esperó hasta que la agencia le ordenara saldar la deuda, para que luego solicitara enmendar su reclamo. Asimismo, el DACo resaltó que el señor Rodríguez no solicitó enmendar la *Querella* dentro del término permitido por el Reglamento de Procedimientos Adjudicativos, Reglamento Núm. 8034 de 14 de junio de 2011.[10] Por consiguiente, expresó que el recurrente mantiene una deuda con el Consejo de Titulares desde que adquirió el apartamento.

Aún inconforme, el señor Rodríguez, presentó el 16 de octubre de 2023 el recurso de revisión de epígrafe. Mediante este, adujo que el DACo cometió los siguientes errores:

> **PRIMER ERROR:** Erró el Departamento de Asunto de Consumidor (DACO) al denegarle a la parte querellante-recurrente enmendar la

---

[10] La Regla 16.1 del referido Reglamento explica que "el querellante podrá enmendar su querella en cualquier momento después de radicada, **pero antes del término de veinte (20) días antes de la vista administrativa** […] y de enmendarse la querella el Departamento notificará la querella enmendada a la parte querellada que tiene a su vez veinte (20) días para contestarla". (Énfasis nuestro). Reglamento de Procedimientos Adjudicativos, *supra*, pág. 16.

querella para alegar una reclamación surgida posterior a presentarse, en específico a consecuencia de los daños del huracán Fiona sobre Puerto Rico, y que estaban relacionados con los defectos reclamados en la querella original.

**SEGUNDO ERROR:** Incidió en error DACO al ordenar que el querellante pagara la cantidad de $101,446.02 (triple penalidad) como condición previa para concederle una vista evidenciaria, cuando el querellante impugnó durante el procedimiento la cantidad de mantenimiento alegada por la administración del condominio.

**TERCER ERROR:** Erró DACO al reconocer como cierta, sin una vista evidenciaria previa, una deuda de mantenimiento acumulada como triple penalidad.

**CUARTO ERROR:** DACO violentó el debido proceso de ley al emitir una resolución ordenando una medida que requería una vista evidenciaria previa como lo dispone la Ley orgánica de la agencia (Ley Núm. 5 del 3 de abril de 1973) en su artículo trece (13).

El 19 de octubre de 2023, emitimos una *Resolución* concediéndole a la parte recurrida el término dispuesto en el Reglamento de este Tribunal. No obstante, la Junta de Directores no presentó su alegato por lo que disponemos del presente recurso sin el beneficio de su comparecencia.

**II.**

**-A-**

La Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, Ley Núm. 201-2003, establece que como Tribunal de Apelaciones estamos facultados para revisar las "decisiones, órdenes y resoluciones finales de organismos o agencias administrativas". Art. 4006(c) 4 LPRA sec. 24(y)(c).

La Ley de Procedimiento Administrativo del Estado Libre Asociado de Puerto Rico, Ley Núm. 38-2017 (LPAU), delimita el alcance de la revisión judicial de las decisiones administrativas.

En cuanto al estándar de revisión que este tribunal debe observar al evaluar los recursos de revisión judicial presentados al amparo de la LPAU, destacamos que, por razón de la experiencia y pericia de las agencias respecto a las facultades que se les han delegado, debemos considerar con gran deferencia las decisiones de los organismos administrativos. *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012). Por consiguiente, en el ejercicio de esa deferencia, las decisiones de las agencias administrativas tienen una presunción de legalidad y corrección que los tribunales deben respetar mientras que la parte que las impugna no produzca suficiente evidencia para derrotarlas. *Íd*.

En síntesis, la revisión judicial de las determinaciones administrativas está limitada a determinar si la actuación del foro administrativo fue razonable y cónsona con el propósito legislativo o si, por el contrario, fue irrazonable, ilegal o si medió abuso de discreción. *Parque Ecuestre v. Junta*, 163 DPR 290, 299 (2004); *T-Jac, Inc. v. Caguas Centrum Limited*, 148 DPR 70, 80 (1999).

Así pues, la revisión judicial de una decisión administrativa se circunscribe a determinar si: 1) el remedio concedido por la agencia fue apropiado; 2) las determinaciones de hechos de la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo; y 3) las conclusiones de derecho fueron correctas. *Pacheco v. Estancias*, 160 DPR 409 (2003).

Como foro revisor lo que nos corresponde es determinar si la agencia actuó arbitraria, ilegal o de manera tan irrazonable que su actuación constituyó un abuso de discreción. *Rivera Concepción v. ARPE*, 152 DPR

116 (2000); *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, 133 DPR 521 (1993). En ese sentido, las decisiones de los organismos administrativos merecen la mayor deferencia judicial. *Otero v. Toyota*, 163 DPR 716 (2005). Por esa razón, tanto los procesos administrativos como sus determinaciones de hechos están cobijados por una presunción de regularidad y corrección. *Vélez v. ARPE*, 167 DPR 684 (2006).

Esa presunción de regularidad y corrección debe ser respetada por los tribunales mientras la parte que la impugne no produzca evidencia suficiente para derrotarla. *Misión Ind. PR v. JP*, 146 DPR 64 (1998).

En lo que respecta a las determinaciones de hecho de un organismo administrativo, los tribunales no deben intervenir si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Batista, Nobbe v. Jta. Directores*, supra, pág. 216; *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485 (2011). Respecto a las conclusiones de derecho de la agencia, distinto de las determinaciones de hecho, el tribunal las puede revisar en todos sus aspectos, sin sujeción a norma o criterio alguno. *OPP v. Aseguradora MSC,* 163 DPR 21, 37 (2004). No obstante, ello no significa que, al ejercer su función revisora, el tribunal pueda descartar libremente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de esta por el propio. *Batista, Nobbe v. Jta. Directores*, supra, pág. 217; *Rebollo v. Yiyi Motors*, supra, pág. 77.

Cónsono con lo anterior, si una parte desea impugnar las determinaciones de hecho realizadas por la agencia deberá presentar ante el foro judicial la

evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. *Camacho Torres v. AAFET*, 168 DPR 66 (2006). Pues el peso de la prueba descansa sobre la parte que impugna la determinación. *Comité de Vecinos Pro-Mej., v. Jta. De Planificación*, 147 DPR 750 (1999).

En ausencia de tal prueba, las determinaciones de hecho de la agencia deben ser sostenidas. *Domínguez v. Caguas Expressway Motors*, 148 DPR 387 (1999). Cuando las determinaciones de hecho impugnadas se basen en prueba testifical desfilada en el proceso administrativo y la credibilidad que la misma le mereció al juzgador, es imprescindible que se traiga a la consideración del foro revisor la transcripción de la vista celebrada o una exposición narrativa de la prueba. *Camacho Torres v. AAFET*, supra. En ausencia de dicha prueba difícilmente se podrá descartar la determinación impugnada. *Íd.*

Por lo tanto, los tribunales apelativos no debemos intervenir con las determinaciones de hechos del foro recurrido cuando no tenemos forma de evaluar la evidencia presentada debido a que la parte concerniente no elevó una exposición narrativa de la prueba. *Benítez Guzmán v. García Merced*, 126 DPR 302 (1990).

**-B-**

El Departamento de Asuntos del Consumidor fue creado mediante la Ley Núm. 5 de 23 de abril de 1973, conocida como la *Ley Orgánica del Departamento de Asuntos del Consumidor*, 3 LPRA sec. 341, *et seq.* Este fue creado con el propósito primordial de velar y establecer los derechos del consumidor y proteger los

intereses de los compradores. Art. 3 de la Ley Núm. 5, 3 LPRA sec. 341b. Asimismo, los poderes conferidos al Secretario de esa agencia están el atender, investigar y resolver las querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía. Art. 6 de la Ley Núm. 5, 3 LPRA sec. 341e(c).

Con la intención de asegurar la solución justa, rápida y económica de las querellas presentadas ante o por el Departamento y proveer un procedimiento uniforme para su adjudicación, el 13 de junio de 2011 se aprobó el Reglamento Núm. 8034 de Procedimientos Adjudicativos del DACO. Regla 1 del Reglamento Núm. 8034. Estas reglas aplicarán a las investigaciones y los procedimientos administrativos sobre querellas iniciadas por consumidores, o por el Departamento. Regla 3 del Reglamento Núm. 8034.

En relación con las enmiendas a las querellas, la Regla 16.1 del Reglamento Núm. 8034 establece que:

> El querellante podrá enmendar su querella en cualquier momento después de radicada, pero antes del término de veinte (20) días antes de la vista administrativa, si la enmienda a la querella se presenta dentro del término de veinte (20) días antes de la vista administrativa quedará a discreción del Juez Administrativo, Oficial Examinador, Secretario o Panel de Jueces el aceptar o no la enmienda a la querella y de enmendarse la querella el Departamento notificará la querella enmendada a la parte querellada que tiene a su vez veinte (20) días para contestarla, si el querellante está representado por abogado, éste estará obligado a notificarla. La enmienda a la querella inicia nuevamente los términos para resolver la querella en el término establecido en la Ley Número 170 de 12 de agosto de 1988, según enmendada, Ley de Procedimiento Administrativo Uniforme.

Por su parte, la Regla 16.2 del referido Reglamento dispone que "[l]a querella podrá entenderse enmendada

durante la vista administrativa para ajustarla a la prueba presentada; excepto en casos celebrados en rebeldía". Regla 16.2 del Reglamento Núm. 8034.

-C-

La Ley Núm. 129 de 16 de agosto de 2020, *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1921 *et seq.*, dispone el ordenamiento jurídico sobre la gobernanza de los inmuebles sujetos al régimen de propiedad horizontal. A este estatuto, le siguen la escritura matriz y el reglamento del condominio de que se trate. *Con Tit. Centro Int'l Torre II v. PRCI*, 210 DPR 403, 413-414 (2022). La primacía del estatuto implica que cualquier cláusula o regla claramente contraria a sus disposiciones sería nula. *Íd.*, pág. 414; *Brown III v. J.D. Cond. Playa Grande*, 154 DPR 225, 238-239 (2001). Del mismo modo, nuestro Tribunal Supremo ha resuelto que las disposiciones del estatuto especial son de carácter mandatorio y no supletorio. *Con Tit. Centro Int'l Torre II v. PRCI*, supra; *Condominio First Federal Savings v. LSREF Island Holdings*, 202 DPR 934, 940 (2019).

De otro lado, es conocida la obligación de todo titular de un apartamento de contribuir con los gastos comunes para el adecuado sostenimiento del inmueble sometido al régimen de propiedad horizontal. *D.A.Co. v. Cond. Castillo del Mar*, 174 DPR 967, 973 (2008). El Artículo 59 de la Ley de Condominios, 31 LPRA sec. 1923d, establece la obligatoriedad de los condóminos de contribuir para cubrir los gastos de administración y conservación. Añade lo siguiente:

> **Ningún titular podrá librarse de contribuir a tales gastos** por renuncia al uso o disfrute de los elementos comunes, ni por abandono del apartamento que le pertenezca, **ni por haber incoado una reclamación**

**administrativa o judicial contra el Consejo de Titulares o la Junta de Directores** por asuntos relacionados con la administración o el mantenimiento de las áreas comunes, salvo que el tribunal o foro competente así la autorice. (Énfasis nuestro). *Íd*.

De otra parte, los Artículos 65 y 66 de la Ley de Condominios, así como la Regla 23 del Reglamento de Condominios, Reglamento Núm. 9386 de 6 de junio de 2022, conceden jurisdicción primaria y exclusiva al DACo para conocer y adjudicar acciones de impugnación que radiquen los titulares de un condominio en que haya al menos una unidad destinada a vivienda contra los acuerdos, omisiones, o actuaciones de la Junta de Directores, del administrador interino, del presidente y el secretario, concernientes a la administración del inmueble y su escritura matriz y reglamento. Ley Núm. 129-2020, 31 LPRA secs. 1923j-1923k; Reglamento de Condominios, Reglamento Núm. 9386 de 6 de junio de 2022.

Así pues, el Artículo 65 de la Ley de Condominios establece que estos acuerdos, omisiones, o actuaciones podrán ser impugnados por los titulares en los siguientes supuestos:

> a. cuando sean contrarios a esta Ley, la escritura matriz y reglamento del condominio;
>
> b. cuando resulten gravemente perjudiciales a los intereses de la comunidad o a un titular;
>
> c. cuando resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo y no haya sido previsible al momento de la compra. Art. 65 de la Ley Núm. 129-2020, *supra*.

En lo aquí pertinente, la Ley de Condominios establece unos requisitos para que los titulares de unidades residenciales puedan instar su acción de impugnación en el foro administrativo. Al respecto, su

Artículo 65 dispone que el titular deberá "demostrar que no tiene ningún tipo de deuda con el Consejo de Titulares [...]". *Íd.* Establece, además, que será una excepción al requisito de no deuda "cuando la impugnación sea para cuestionar la deuda que alegadamente tiene". *Íd.* De modo, que no se tiene que cumplir con el requisito de no ser un titular deudor cuando lo que se impugna es la deuda misma.

**III.**

En el caso de autos, el recurrente imputó al DACo cuatro señalamientos de error. En el primer señalamiento de error, el señor Rodríguez alega que el DACo incidió al no permitirle enmendar su *Querella* para reclamar los daños que surgieron posteriores a su presentación, como consecuencia del Huracán Fiona, y los cuales están relacionados con los defectos reclamados.

De otra parte, los siguientes tres señalamientos de error, por estar relacionados entre sí, los discutiremos en conjunto. En síntesis, el recurrido plantea que erró el DACo al ordenarle pagar las cuotas alegadamente adeudadas, sin la celebración de una vista evidenciaria, violentando así el debido proceso de ley.

De umbral, es menester recordar que las decisiones administrativas están acompañadas de una presunción de legalidad y corrección y la parte recurrente es quien tiene la obligación de derrotarla.

En el presente caso, el 15 de septiembre de 2021, el recurrente presentó una *Querella* ante el DACo contra la Junta de Directores del Condominio Torruella. Mediante esta, solicitó como remedio el cese y desista de la Junta de Directores por haber cortado el servicio de energía eléctrica. Sostuvo que, tuvo que reparar las

tuberías comunales, ante la dejadez e irresponsabilidad de la parte recurrida. A su vez, alegó que la Junta de Directores no ha querido acreditar los gastos incurridos a su cuota de mantenimiento.

De las determinaciones de hechos se desprende que, el señor Rodríguez no enmendó la querella para incluir alegaciones específicas sobre la deuda por concepto de la cuota de mantenimiento. Por el contrario, el recurrente llegó a informar que era su intención pagar el balance adeudado, condicionado a que se le acrediten las facturas de las labores realizadas para la corrección de tuberías comunales.[11]

A su vez, conforme surge del expediente, el Consejo de Titulares reclamó en varias ocasiones una deuda por concepto de cuotas, póliza de seguro, intereses, penalidades y/o derramas, y finalmente le reclamaron al recurrente la cantidad de $101,446.02. Como a su vez, le reclamaron una penalidad por la reconexión del servicio de energía eléctrica de forma ilegal. Por tal motivo, el DACo ordenó el pago de la totalidad de la deuda, luego de haber citado a las partes a una vista administrativa.

El Artículo 59 de la Ley de Condominios, *supra*, establece la obligatoriedad de los titulares del condominio a contribuir para cubrir los gastos de administración y conservación. Añade que, "[n]ingún titular podrá librarse de contribuir a tales gastos por renuncia al uso o disfrute de los elementos comunes […] ni por haber incoado una reclamación administrativa o judicial contra el Consejo de Titulares o la Junta de

---

[11] Véase, inciso número 15 de las determinaciones de hecho en la *Resolución* emitida el 28 de septiembre de 2023 por el DACo.

Directores por asuntos relacionados con la administración o el mantenimiento de las áreas comunes."

A su vez, el Artículo 65 de la precitada Ley, establece que quien pretenda impugnar una acción u omisión de la Junta de Directores, del Administrador Interino, del Agente Administrador o un acuerdo del Consejo de Titulares tendrá que demostrar que no tiene ningún tipo de deuda con el Consejo de Titulares.

De otra parte, la Regla 16.1 del Reglamento de Procedimiento Adjudicativos, *supra*, determina que para poder enmendar una querella una vez radicada, tendrá hasta veinte (20) días antes de la vista administrativa.

Así las cosas, concluimos que el recurrente no enmendó su querella dentro del término dispuesto en el reglamento. De igual forma, el señor Rodríguez reconoció que mantiene una deuda con el Consejo de Titulares, y la cual dejó de pagar, hasta que no le fueran acreditados los gastos incurridos. Sin embargo, el caso de autos no fue presentado para impugnar la deuda y lo eximiera de la obligación continua a contribuir a las cuotas, seguros y derramas, según establece el Artículo 59 de la Ley de Condominios, *supra*. El señor Rodríguez, como titular de una unidad en el Condominio Torruella, tenía la obligación de mantenerse al día con las cuotas de mantenimiento.

En fin, concluimos que el dictamen recurrido es correcto en derecho, ya que se ampara en prueba que obra en el expediente administrativo. Así pues, el recurrente no derrotó la presunción de corrección de la determinación administrativa impugnada.

**IV.**

Por los fundamentos que anteceden, **CONFIRMAMOS** la *Resolución* emitida el 28 de septiembre de 2023 por el Departamento de Asuntos del Consumidor.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones